Geoffrey C. Angel
ANGEL LAW FIRM
803 West Babcock
Bozeman, Montana 59715
Telephone (406) 922-2210
Facsimile (406) 922-2211
christianangel@hotmail.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| KATHERINE DILLON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PROGRESSIVE CORPORATION, and its subsidiaries and affiliates including PROGRESSIVE CASUALTY INSURANCE COMPANY, ARTISAN AND TRUCKERS CASUALTY COMPANY, all doing business as PROGRESSIVE®,<br><br>Defendants. | Cause Number CV-17-99-H-CCL<br><br>DILLON'S RESPONSE TO MOTION TO DISMISS AND DENY CLASS CERTIFICATION and BRIEF IN SUPPORT OF MOTION TO CERTIFY CLASS |

This is a third-party insurance bad faith case which seeks to challenge Progressive's corporate-wide scheme to underpay loss of use damages in Montana. Progressive admits the scheme shifted $3,132 from Mrs. Dillon's loss of use claim into its corporate coffers, but argues the Court should not be concerned with the merits but should focus on the technicalities of her pleading. Progressive argues, without any legal requirement, Mrs. Dillon's complaint "fails to allege the UTPA statutory prerequisites." It means Mrs. Dillon's complaint does not allege settlement or judgment of the underlying claim. But, there is no such requirement. A complaint under the UTPA is not required to plead sufficient facts to defeat

what is an affirmative defense.  More importantly, Mrs. Dillon settled with Progressive's insured just four days before filing this case.  *Exhibit A*.  The redacted settlement agreement is attached.  Progressive's motion to dismiss must be denied because it is unsupported by both fact and law.

Progressive hopes to achieve an end run around the Rules and the evidence.  The first ten (10) pages of its brief are premised upon the unsupported proposition that a bad faith claim must plead facts to defeat the statute of limitations defense.  It is this pleading argument that it claims entitles it to dismissal with prejudice.  The problem is Progressive states this rule repeatedly but never cites any authority that requires these facts to be pled because there is none.  The statute on which Progressive's argument rests certainly does not create an obligation to plead a settlement or judgment.  The statute sets forth the date of accrual and the time frame within which the limitation runs.  Section 33-18-242, MCA, creates affirmative defenses which must be raised affirmatively.  As such they may be defeated by evidence if the facts are not clear from the pleadings.  In this case the pleadings consist of Complaint but no Answer.

Section 33-18-242, MCA, requires a third-party to settle or obtain a judgment before filing a UTPA claim.  It then requires the claim to be filed within 2 years from the bad act for an insured and within 1 year from the date of settlement or judgment for a third-party.  It does not include any provision that requires these facts be pled to constitute a claim for relief.  Progressive cites no authority for such a rule and no case has ever held the facts surrounding the accrual and timeliness of the claim must be pled.  The accrual and statutory bar are affirmative defenses which must be raised affirmatively.  Because Progressive is aware the evidence doesn't support its argument that the claim is not yet ripe, it presses this notion that the failure to pled these facts is a bar to the action despite the evidence.  There is no factual or legal support for its position.

On January 5, 2017 Mrs. Dillon settled her claim against Progressive's insured. On January 9, 2017 Mrs. Dillon filed this action against Progressive. Mrs. Dillion's complaint states a claim that is plausible on its face for bad faith insurance practices for unlawfully underpaying her loss of use . Thus, it satisfies the *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)* and *Ashcroft v. Iqbal, 556 U.S. 662 (2009)* pleading requirements. Progressive's unlawful underpayments are not just possible they are plausible under the facts pled.

Progressive owes a fiduciary duty to first and third-party claimants alike. It is the fiscal steward of reserves and must pay the fair market value for insured and third-party claimants' losses. Instead, Progressive instituted a corporate scheme, despite its fiduciary duties, to refuse payment of the fair market value for loss of use in Montana. Progressive pays at a below market rate which it negotiated with Enterprise Rent-A-Car for its private rentals. While this private below market rate may apply to those rentals Progressive actually gets from Enterprise it does not apply to the calculation for loss of use when no car is rented. Progressive acknowledges in its motion it "withheld $3,132.18 from [Mrs. Dillon] for the 'fair market value of a comparable vehicle.'" *Progressive's Brief in Support, p. 5.* That is to say, in this one insurance claim Progressive's corporate scheme to pay below market rental rates for loss of use shifted $3,132 from Mrs. Dillon into Progressive's corporate profits. Mrs. Dillon seeks to challenge that corporate wide practice that affected her and affects all Montanans with Progressive claims.

Mrs. Dillon's legal position is quite simple. Under Montana law Progressive owed her the fair market value of a comparable vehicle for the days she was without a replacement vehicle. Progressive contends it could have rented a vehicle comparable to Mrs. Dillon's Hummer H3 under a private agreement with Enterprise for $54.99 per day. In fact a comparable vehicle, a Luxury SUV, rents for $229 per day at the cheapest rental agency in the Bozeman area. Progressive's institutional practice to underpay loss of use claims resulted in a $3,132 windfall

in retained reserves for Progressive's bottom line on this single claim.

For purposes of this motion Progressive acknowledges it applies the practice universally to all Montana claims. Mrs. Dillon's claims are typical, common and a Class should be Certified under Rule 23(b)(1) or 23(b)(3). *See Tkachyk v. Travelers, et al., CV-16-28-M-DLC filed May 17, 2017 (D.Mont.)* (class certified where all Travelers companies subrogated Montana claims without individualized 'made whole' determination); *Ferguson v. Safeco, et al., 2008 MT 109, 342 Mont. 380, 180 P.3d 1164* (class certified where all Safeco companies subrogated Montana claims without individualized "made whole" determination); *Churchill et al. v. Trinity Universal Ins. Co., DV-08-99-M-DWM (Order March 2, 2012)* (class certified where Trinity denied stacking of coverages without individualized made whole determination).

## Facts Common to All Members

For purpose of class certification and the motion to dismiss all well-pled factual allegations in the complaint[1] are taken as true and all reasonable inferences are drawn in favor of plaintiffs. The complaint is attached as Exhibit B.

1. Progressive has a system wide adjusting practice in Montana to refuse to pay the full measure for loss of use damages for vehicles damaged in Montana or under a Montana policy of insurance. *Class Action Complaint, ¶ 8.*

2. Progressive systematically pays or offers to pay, not the reasonable rental value of a comparable vehicle, as required by Montana law but instead pays its "sweatheart" rate with Enterprise Rent A Car which is a rate well below the daily rental value of a comparable vehicle. *Id at ¶ 9.*

---

[1] Due to a clerical error, the first page of the complaint served on Defendant appears to be incorrect. A true and correct copy of the complaint is on file and attached hereto as Exhibit B.

3. Instead of paying the fair market value of a comparable vehicle Progressive pays or offers to pay a reduced rate based on its private negotiated rate with just one national rental car agency, Enterprise Rent A Car, which is far below the reasonable rental value of a comparable vehicle. *Id at ¶ 13.*

4. In this case, a comparable vehicle, a Luxury SUV, rents for $229 per day at the cheapest rental agency in the Bozeman area and yet Progressive claims it has negotiated a sweetheart rate of $54.99 per day with Enterprise Rent A Car. The difference withheld by Progressive in this single property damage claim is $3,132.18 *Class Action Complaint, ¶ 14; See Expedia Car Rental Rates for Bozeman, Exhibit B thereto.*

5. Progressive denied the fair market reasonable rental value of a comparable vehicle based upon its institutional practice to pay only the sweetheart rate "guaranteed rate by Enterprise Rent A Car" when Progressive actually rents a vehicle from Enterprise. *Class Action Complaint, ¶ 15; Letter Progressive to Angel dated March 25, 2015, Exhibit C thereto.*

6. In this case Progressive did not provide Katherine Dillon with a rental vehicle from Enterprise at its sweetheart below market rate and it cannot rely on this reduced rate to measure the fair market reasonable rental value when calculating loss of use. The result of such a practice in this case alone resulted in an underpayment of $3,132.18. *Class Action Complaint, ¶ 16.*

7. On March 1, 2015 Katherine Dillon was traveling West along Tschache Lane in Bozeman on dry clear roads when Progressive's insured pulled out of a parking lot and t-boned Mrs. Dillon's vehicle. *Id at ¶ 17.*

8. Mr. Dillon used the vehicle the day following the accident to drive to work but didn't use it for anything else once he noticed significant alignment issues which appeared to make it unsafe to drive. *Id at ¶ 18.*

9. Mr. Dillon then took the vehicle for a repair estimate after which they were told not to drive the vehicle due to safety issues. *Id at ¶ 19.*

10. Mrs. Dillon suffered the loss of use of her Hummer H3 up to and during the time it was being repaired. *Id at ¶ 20.*

11. Mrs. Dillon and Progressive agreed the loss of use was from the date of the accident through March 18, 2015 or for 18 days. *Id at ¶ 21.*

12. Mrs. Dillon made a demand for loss of use damages from Progressive at the market rental rate and in turn Progressive paid her not the fair market value of a comparable vehicle but based on its sweatheart rate with Enterprise Rent A Car. *Id at ¶ 22.*

## Legal Analysis

### Standard of Review

Rule 23 of the Federal Rules of Civil Procedure governs class actions. A class action can be maintained if the four criteria of Rule 23(a) and at least one criteria of Rule 23(b) are met. "Rule 23 provides more than 'a mere pleading standard' and the plaintiff 'must be prepared to prove' that it can satisfy each of the Rule 23 requirements." *Wal-Mart Stores, Inc. v. Dukes, 564 U.S. v. 338 (2011).* However, the test for Class Certification is measured by the allegations of the complaint not the burden of proof.

Progressive challenges class certification. It argues Mrs. Dillon's claim is not typical because she has not alleged a settlement or judgment. *Progressive's Brief in Support, p. 11.* It also argues Mrs. Dillon's claim is not common because the class members claims may not have progressed to the point of a settlement or judgment. *Id.* Taken as a whole Progressive's entire "individualized standing"

arguments for typicality and commonality would preclude every insurance class action certified in this district over the past ten years. The issue is not whether *every* issue of fact or law is typical or common but whether a single issue of fact or law can drive the resolution of the class claims. Progressive's scheme to underpay Montana loss of use claims is just such an issue typical and common to the Class.

Progressive has not challenged numerosity[2] or whether Mrs. Dillon will fairly and adequately protect the interests of the class.

### 1. The Class Definition

Mrs. Dillion proposed the following class definition for class-wide relief:

> All claimants entitled to loss of use damages in which Progressive paid or offered to pay based upon its negotiated rates rather than the market rates for a comparable vehicle.

This definition would create a Class of all claimants whom Progressive underpaid loss of use based on below market rates. This Class should be certified.

### 2. Class Action Requirements

A court may certify a class when certification would conserve judicial resources by permitting a common issue to be litigated in an economical fashion under Rule 23, F.R.Civ.P. *Gen. Tel. Co. Of the Sw. v. Falcon, 457 U.S. 147, 155 (1982)*. A class action is superior when defendant acts in a systematic manner towards all class members causing them a common harm. *Id.* In this case the Court's determination regarding the proper measure of loss of use will resolve all member's claims and disgorge the benefits of underpaying Montana claims.

The representative party seeking class certification must demonstrate the four criteria of Rule 23(a): (1) the class is numerous; (2) the class involves a common issue of fact or law; (3) the representative's claims are typical of the class; and (4) the representative member will fairly and adequately protect the

---

[2] Progressive conceded numerosity, representing the class includes more than 100 members and involves more than $5,000,000 in loss of use benefits exclusive of interest and costs.

interests of the class. The representative party must also establish at least one of the criteria of Rule 23(b). In this case, the Court should certify the class under Rule 23(b)(1) and Rule 23(b)(3) because separate actions would establish separate standards of conduct for Progressive as to loss of use and a class action is superior to separate actions where, as here, the operative facts predominate.

The Court should deny Progressive's motion to deny certification and Certify the Class of all claimants denied fair market loss of use by Progressive. This would disgorge the improper windfall withheld by Progressive from a course and pattern of violating Montana law regarding loss of use. The law on loss of use is well-settled and contained within the Montana's Commissioner of Insurance's Advisory Memorandum on Loss of Use issued in 2009.

> With regard to loss of use of personal property, the measure of damages is the reasonable rental value of comparable property for the period of time necessary to repair or replace the damaged property regardless of whether or not a rental was obtained. * * * reasonable rental value of a comparable vehicle means the rental value of a vehicle of like kind and quality from the time of loss until the damaged vehicle is repaired.

*Letter Lindeen to Property and Casualty Insurers dated March 16, 2009.*

Even though the requirements of Montana law are crystal clear and spelled out by the Commissioner of Insurance in 2009, Progressive has been underpaying claims based on a private agreement that allows it to rent vehicles for less. Because the terms and breadth of its practice are undisputed, Progressive admits the salient facts for the Court's consideration on class certification. They are:

"Plaintiff made a third-party demand for loss of use damages from Progressive at the 'fair market value of a comparable vehicle.'" *Progressive's Brief in Support, p. 5*. "Progressive paid Plaintiff $54.99 per day for the 18 days she was unable to use her vehicle and withheld $3,132.18 from her for the 'fair market value of a comparable vehicle.'" *Id*. "These facts are assumed true for purposes of this motion." *Id*. Thus, this case turns on an issue of law common to the representative and all class members.

The legal dispute is whether Progressive owes loss of use at the prevailing market rate or at a below market private rate agreed upon between Progressive and one rental agency Enterprise. What occurred here is the fair market rental value of a comparable vehicle to Dillon's Hummer H3 was $4,122 or $292 for 18 days but Progressive refused to pay more than $990 because it entered into a private agreement with Enterprise which would have allowed it to rent an SUV for $55 per day. But, Progressive did not rent Dillon a vehicle. Instead it paid Dillon loss of use at a below market private rate rather than the fair market rate. Progressive implemented this institutional scheme to deny loss of use at the market rate by refusing to pay more than its negotiated below market rate even when it doesn't rent a vehicle. This violates Montana law. And in just a single insurance claim Progressive amassed $3,132 in ill-gotten gains. In fact, Progressive represents this practice affects more than 100 Montanans and has resulted in over $5,000,000 in underpayments. *Notice of Removal.* The Court should swiftly halt the practice.

Progressive acknowledges "[t]he 'test of typicality' 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Progressive's Brief in Support, p. 11 citing Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1030 (9th Cir. 2012).* By comparison "[c]ommonality is satisfied when the question of law linking class members is substantially related to resolving the litigation, even though individuals may not be similarly situated." *Sieglock v. Burlington N. Santa Fe Ry. Co., 2003 MT 355,, ¶ 11, 319 Mont. 8, 81 P.3d 495.*

> The commonality requirement is not a stringent threshold and does not impose an unwieldy burden on plaintiffs. In fact, as a general rule, all that is necessary to satisfy Rule 23(a)(2) is an allegation of a standardized, uniform course of conduct by defendants affecting plaintiffs. Plaintiffs need only show a 'common nucleus of operative facts' to satisfy Rule 23(a)(2).

*LaBauve v. Olin Corp., 213 F.R.D. 632, 668 (S.D.Ala. 2005).*

Mrs. Dillon has the same injury as class members (underpaid loss of use), Progressive concedes its practice to pay below market rates is applied system wide, and the Class as defined has been injured by the unlawful underpayment of loss of use. Mrs. Dillon's claims are both typical of and common to the Class.

Here we have much more than an allegation of standardized conduct common to all members for purposes of this motion. Progressive concedes it "withheld $3,132.18 from her for the 'fair market value of a comparable vehicle.'" "These facts are assumed true" "for the purposes of this motion." *Progressive's Brief in Support, p. 5*. Progressive admits the scheme exists and that it resulted in the underpayment of more than $5,000,000 to at least 100 Montanans.

A class action is superior to individual claims, would conserve judicial resources and prevent differing standards of conduct that could result from multiple claims. This case can address all claims for underpayment of loss of use in one action, providing a single statement of the law applicable to all members of the class. The determination of damages would be a formulaic calculation based on the fair market rate and number of days each claimant was without a vehicle minus the underpayment. Such a calculation would be superior to separate claims because Progressive has already been able to identify the number of individuals involved based on the Class Description and has been able to identify the amount of money involved in the underpayments. Disgorging these withheld benefits in one action would achieve judicial economy proportionate to size of the insurer's improper adjustment practices.

The Court should deny the motion to dismiss, Certify the Class of all similarly situated individuals and order Progressive to provide a list of all claimants along with physical and email addresses (if available) so Class Notice can be issued.

## Conclusion

Mrs. Dillon settled the underlying claim against Progressive's insured before filing this case and therefore it is ripe under Section 33-18-242, MCA.

Progressive has not challenged numerosity or adequacy for class certification. In fact, Progressive affirmatively established numerosity when it represented there are more than 100 claimants involved in the underpayments.

Mrs. Dillon's claims are common and typical of the Class and the issue of law regarding the proper measure of loss of use will drive the resolution of all claims in one action. For these reasons, Mrs. Dillon requests the Court certify the Class and set a schedule for Class Notice and discovery.

DATED this 8th day of November 2017


/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains 3,218 words according to the word count of WordPerfect 12 excluding caption and certificates of service and compliance.

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November 2017 I caused a true and correct copy of the foregoing document to be served upon the opposing party or counsel by electronic filing or if a conventional filer as follows:

Tammy Wyatt-Shaw
Hammer, Quicc & Shaw PLLC
100 Financial Drive
Kalispell,, Montana 59904

Baker & Hostetler, PLLP
Casie D. Collignon
Justin T. Winquist
1801 California Street, Suite 4400
Denver, Colorado 80202

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

DILLON'S RESPONSE TO MOTION TO DISMISS AND DENY CLASS CERTIFICATION AND BRIEF IN SUPPORT OF MOTION TO CERTIFY CLASS
PAGE 12 OF 12.;